UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LAURA DONAHUE** | : | |
| **209 N. Trenton St., #3** | | |
| **Arlington, VA 22203** | : | |
| | | |
| **Plaintiff,** | : | |
| | | **Civil Action No.: _____** |
| **v.** | : | |
| | | |
| **FIG & OLIVE DC LLC** | | |
| **d/b/a Fig & Olive** | : | |
| **133 W 19th St., Suite 300** | | |
| **New York, NY  10011** | : | |
| | | |
| **Serve:** | : | |
| **Corporation Service Company** | | |
| **1090 Vermont Ave., NW** | : | |
| **Washington, DC  20005** | | |
| | : | |
| **Defendant.** | : | |
| _____ | | |

**COMPLAINT**
**(Food Poisoning – Strict Liability, Negligence)**

Plaintiff Laura Donahue ("plaintiff"), by and through her attorneys of record, asserting claims against Defendant Fig & Olive USA, Inc., d.b.a. Fig & Olive DC, LLC, a District of Columbia Corporation ("defendant"), and states and alleges as follows:

## I.    PARTIES

1. The plaintiff, Laura Donahue, is a resident of Arlington, Virginia, and is a citizen of the Commonwealth of Virginia.

2. The defendant, Fig & Olive USA Inc., d.b.a. Fig & Olive DC, LLC, is a corporation organized and existing under the laws of the Delaware. Defendant, together with its subsidiaries (collectively the "Company"), develops and operates certain restaurants. At all times

relevant to the allegations contained in this complaint, the Company was registered to do business, and did conduct business, in the District of Columbia, including at 934 Palmer Alley, N.W., Washington, D.C. 20001. The Company manufactured and sold the food products that are the subject of this action at its restaurant location in the District of Columbia.

## II.     JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a)(1) and (e) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the defendant has certain minimum contacts with the District of Columbia such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

4.      Venue in the United States District Court for the District of Columbia is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the plaintiff's claims and causes of action occurred in this judicial district, and because the defendant was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## III.     GENERAL ALLEGATIONS

**The *Salmonella* Outbreak at Fig & Olive**

5.      The District of Columbia Department of Health (DOH) confirms the reinstatement of operations at the Fig & Olive food establishment in Washington, D.C. This follows the food establishment's closure for six days due to a *salmonella* outbreak that, to date, has caused more than 60 people to become ill, including residents of five states in addition to the District of Columbia. Ten confirmed cases among District of Columbia and Virginia residents have been identified. An additional 150 possible cases are being investigated.

6. "Over the past six days we have been working very closely with the Department of Forensic Science and persons who ate at the restaurant who may have been impacted by this outbreak to ensure a comprehensive assessment and solution that will sustain the safety of those living, working and visiting our nation's capital," said Dr. LaQuandra Nesbitt, Director of DOH. "Fig and Olive has been very cooperative, responsive and transparent throughout this process and has complied with the directive issued from the department."

7. Fig & Olive met the following requirements, which allowed their operations to be restored by DOH:

- Provided evidence/invoices of the clean-up and sanitization of the kitchen/premises;
- Verified employee health training, which included signed forms;
- Destroyed current food inventory;
- Corrected all violations cited in recent inspections;
- Provided a Standard Operating Procedure for food handling and preparation; and
- Implemented training program to reinforce good retail practices.

8. Through follow-up inspections, DOH has been able to confirm that Fig & Olive has removed all conditions that may have contributed to the *salmonella* outbreak. The department will also increase surveillance of the establishment to ensure compliance with food safety regulations and to ultimately protect the health of the city's residents, workers and visitors.

*Salmonella*

9. The term *Salmonella* refers to a group or family of bacteria that variously cause illness in humans. The taxonomy and nomenclature of *Salmonella* have changed over the years and are still evolving. Currently, the Centers for Disease Control and Prevention (CDC) recognizes two species, which are divided into seven subspecies. These subspecies are divided

into over 50 serogroups based on somatic (O) antigens present. The most common *Salmonella* serogroups are A, B, C, D, E, F, and G. Serogroups are further divided into over 2,500 serotypes. *Salmonella* serotypes are typically identified through a series of tests of antigenic formulas listed in a document called the Kauffmann-White Scheme published by the World Health Organization Collaborating Centre for Reference and Research on *Salmonella*.

10. *Salmonella* is an enteric bacterium, which means that it lives in the intestinal tracts of humans and other animals, including birds. *Salmonella* bacteria are usually transmitted to humans by eating foods contaminated with animal feces or foods that have been handled by infected food service workers who have practiced poor personal hygiene. Contaminated foods usually look and smell normal. Contaminated foods are often of animal origin, such as beef, poultry, milk, or eggs, but all foods, including vegetables, may become contaminated. Many raw foods of animal origin are frequently contaminated, but thorough cooking kills *Salmonella*.

**Medical Complications of *Salmonellosis***

11. The term reactive arthritis refers to an inflammation of one or more joints, following an infection localized at another site distant from the affected joints. The predominant site of the infection is the gastrointestinal tract. Several bacteria, including *Salmonella*, induce septic arthritis. The resulting joint pain and inflammation can resolve completely over time or permanent joint damage can occur.

12. The reactive arthritis associated with Reiter's may develop after a person eats food that has been tainted with bacteria. In a small number of persons, the joint inflammation is accompanied by conjunctivitis (inflammation of the eyes), and uveitis (painful urination). *Id*. This triad of symptoms is called Reiter's Syndrome. Reiter's syndrome, a form of reactive arthritis, is an uncommon but debilitating syndrome caused by gastrointestinal or genitourinary

infections.  The most common gastrointestinal bacteria involved are *Salmonella*, *Campylobacter*, *Yersinia*, and *Shigella*.  A triad of arthritis, conjunctivitis, and urethritis characterizes Reiter's syndrome, although not all three symptoms occur in all affected individuals.

13. *Salmonella* is also a cause of a condition called post infectious irritable bowel syndrome (IBS), which is a chronic disorder characterized by alternating bouts of constipation and diarrhea, both of which are generally accompanied by abdominal cramping and pain.  In one recent study, over one-third of IBS sufferers had had IBS for more than ten years, with their symptoms remaining fairly constant over time.  IBS sufferers typically experienced symptoms for an average of 8.1 days per month.

**Plaintiff Laura Donahue's Illness**

14. The plaintiff dined at the defendant's restaurant on Wednesday, September 2, 2015. She shared crostini with her colleague that included goat cheese, caramelized onion, chive, manchego, fig, marcona almond pea, asparagus, and ricotta lemon thyme. She also consumed a gimlet and a cucumber martini for drinks, the Fig & Olive salad as a starter, truffle mushroom risotto for her main course, and dessert.

15. The following day, the plaintiff began to feel fatigued. She also experienced headache and stomach ache.

16. On Friday, the plaintiff began to run a fever and experiencing gastrointestinal distress. That Sunday, she was scheduled to run a half-marathon. Before the race began, the plaintiff was still running a low-grade fever and experiencing gastrointestinal symptoms. She simply thought that she had contracted a "stomach bug" instead of a more severe illness.

17. The plaintiff had trained diligently to be in top form prior to the race, so she thought that she could simply jog at a slower pace and ensure appropriate hydration. At the finish

line, she fainted. When she awoke, she was on a stretcher, and immediately sent to triage to be packed with ice to lower her core temperature. Then the plaintiff was sent to the medical tent to be stabilized and receive IV fluids.

18. After her collapse at the half-marathon, the plaintiff went back to her hotel to recover, but her fever spiked again and she felt lethargic and dizzy. Her friend transported her to the emergency room in Virginia Beach, where she was seen by a doctor. The hospital ran blood work, provided IV fluids, and prescribed Lomotil and anti-nausea medicine.

19. Tuesday after the race, and after experiencing no progress, the plaintiff's friend transported her to her former primary care physician in Rockville, Maryland, as her current primary care physician was unavailable. The doctor ran a series of tests, including a cancer screen to rule out cancer. That Friday, still feeling seriously ill, and after hearing a news report about the *Salmonella* outbreak at Fig & Olive, she was evaluated by her current primary care physician in Arlington Virginia for additional laboratory testing, which included a stool culture.

20. Due to plaintiff's condition, her mother, a retired registered nurse, flew in from Texas on Tuesday. She was still running dangerously low blood pressure when her mother arrived. The plaintiff was advised by her emergency room doctors to refrain from activity. Plaintiff's weakness even prevented her from taking her large dog outside for basic needs and exercise. She was also advised to visit the emergency room if her symptoms worsened.

21. Since the stool culture done by her PCP, the plaintiff has been contacted by DOH, which conducted an extensive one-hour interview of her to determine exactly what she ate and what she experienced. She then talked with the epidemiologist's office as soon as her results confirmed that she had *Salmonella,* and she recently spoke with the Virginia Department of Health.

22. The plaintiff's low-grade fever did not subside for eight days, and her gastrointestinal distress was experienced for ten days.

### IV.   CAUSES OF ACTION
#### COUNT I
#### (Strict Liability)

23. The defendant was at all times relevant hereto the manufacturer and seller of the adulterated food product that is the subject of the action.

24. The adulterated food product that the defendant manufactured, distributed, and/or sold was, at the time it left the defendant's control, defective and unreasonably dangerous for its ordinary and expected use because it contained *Salmonella*, a deadly pathogen.

25. The adulterated food product that the defendant manufactured, distributed, and/or sold was delivered to the plaintiff without any change in its defective condition. The adulterated food product that the defendant manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by the plaintiff.

26. The defendant owed a duty of care to the plaintiff to design, manufacture, and/or sell food that was not adulterated, which was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health. The defendant breached this duty.

27. The defendant owned a duty of care to the plaintiff to design, prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer. The defendant breached this duty.

28. Plaintiff suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the

defendant manufactured, distributed, and/or sold.

## COUNT II
### (Negligence)

29. The defendant owed to the plaintiff a duty to use reasonable care in the manufacture, distribution, and sale of its food product, the breach of which duty would have prevented or eliminated the risk that the defendant's food products would become contaminated with *Salmonella* or any other dangerous pathogen. The defendant breached this duty.

30. The defendant had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of its food product, but failed to do so, and was therefore negligent. The plaintiff is among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provision pertaining to the manufacture, distribution, storage, and sale of similar food products.

31. The defendant had a duty to properly supervise, train, and monitor its respective employees, and to ensure their compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products, but it failed to do so, and was therefore negligent.

32. The defendant had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances and regulations, and that were clean, free from adulteration, and safe for human consumption, but it failed to do so, and was therefore negligent.

33. As a direct and proximate result of the defendant's acts of negligence, the plaintiff sustained injuries and damages in an amount to be determined at trial.

## V. DAMAGES

34. The plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the defendant, in an amount that shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, both past and future; emotional distress, both past and future; pharmaceutical expenses, both past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays for judgment against defendant as follows:

A. Ordering compensation for all general, special, incidental, and consequential damages suffered by the plaintiff as a result of the defendant's conduct in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000);

B. Ordering statutory prejudgment interest;

C. Awarding plaintiff reasonable attorneys' fees and costs, to the fullest extent allowed by law; and

D. Granting all such additional and/or further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

DATED: September 18, 2015

                           REGAN ZAMBRI LONG, PLLC

                  By: */s/ Salvatore J. Zambri*
                     Salvatore J. Zambri     #439016
                     szambri@reganfirm.com
                     1919 M Street, N.W., Suite 350
                     Washington, D.C. 20036
                     Telephone: 202.822.1899
                     *Co-Counsel for Plaintiff*


                           MARLER CLARK, LLP, PS

                  By: */s/ William D. Marler*
                     William D. Marler, Esq.
                     (Admission *pro hac vice* pending)
                     bmarler@marlerclark.com
                     1301 Second Avenue, Suite 2800
                     Seattle, WA 98101
                     Telephone: 206-346-1888
                     *Co-Counsel for Plaintiff*